UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 15-14146-RGS

GREAT DIVIDE INSURANCE COMPANY

v.

LEXINGTON INSURANCE COMPANY

MEMORANDUM AND ORDER ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT

July 19, 2016

STEARNS, D.J.

On April 3, 2014, a refuse truck driven by Richard Prezioso struck and killed a bicyclist, Owen McGrory, in Charlestown, Massachusetts. In September of 2014, McGrory's wife, Shannique McGrory, and his brother, John McGrory, filed a wrongful-death action in Suffolk Superior Court against Prezioso and his employers, EZ Disposal Service, Inc. (EZ), and Capitol Waste Services, Inc. (Capitol), and the registered owner of the truck, Atlantic Refuse Leasing Equipment, LLC.

On October 30, 2015, plaintiff Great Divide Insurance Company (Great Divide) brought this declaratory judgment action against Lexington Insurance Company (Lexington) seeking a determination of the priority of their competing policies providing excess wrongful-death coverage to the

defendants in the state court case. Lexington removed this case to the federal district court on December 15, 2015, on diversity grounds. Great Divide contends that its $1 million Commercial Lines Policy (Great Divide Policy), issued to EZ, and Lexington's $10 million Commercial Umbrella Liability Policy (Lexington Policy), issued to Capitol, insure the same layer of coverage. If true, Great Divide asserts, both insurers are responsible for a pro rata share of any wrongful death recovery by the McGrory estate.[1] Lexington counters that its policy is a "true excess policy," and because the Great Divide Policy is essentially a primary policy, it must be exhausted before Lexington becomes obligated to pay into any judgment.

## BACKGROUND

The material facts are not disputed. The parties agree that both the Great Divide Policy and the Lexington Policy provide excess coverage to all defendants in the wrongful-death action. The parties also agree that Capitol's primary insurer, Commerce Insurance Company, is liable for the first layer of insurance coverage, to its policy limit of $1 million.[2] The dispute

---

[1] By "pro rata" Great Divide means that it would be responsible for $1 of excess insurance for every $10 contributed by Lexington.

[2] Commerce has provided a defense under its policy to all defendants in the wrongful-death action.

centers on whether Great Divide, Lexington, or the insurers together, should provide the second layer of insurance.

**The Great Divide Policy**

The Great Divide Policy provides $1 million of coverage for bodily injury and property damage per accident involving a covered business vehicle. The Policy is structured to provide a primary layer of insurance for vehicles owned by the policyholder, and excess insurance for vehicles *not* owned by the policyholder. The Great Divide Policy's "Other Insurance" clause specifies that "[f]or any covered 'auto' you own, this coverage form provides primary insurance. For any covered 'auto' you don't own, the insurance provided by this coverage form is excess over any other collectible insurance." Great Divide's Statement of Material Facts (SMF), Ex. C at 25 (Dkt. #18-3).[3] The refuse truck involved in the accident was a "covered auto," but not owned by Capitol.

**The Lexington Policy**

---

[3] The "Other Insurance" provision also specifically contemplates pro rata contribution with other policies which cover on the same basis: ""When this coverage form and any other coverage form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our coverage form bears to the total of the limits of all the coverage forms and policies covering on the same basis." SMF, Ex. C at 25.

3

The Lexington Policy provides $10 million of similar coverage. However, the Policy stipulates that Lexington will pay "those sums in excess of the 'Retained Amount'" for any "bodily injury" covered by the policy.[4] *Id.*, Ex. B at 4. The Policy's "Other Insurance" provision further states that "if other valid and collectible insurance applies to damages that are also covered by this policy, this policy will apply excess of the 'other insurance.'" *Id.* at 25. "Other Insurance" is defined as "a valid and collectible policy of insurance providing coverage for damages covered in whole or part by this policy." *Id.* at 20. Finally, the Policy states that it applies "only in excess of the total applicable limits of 'scheduled underlying insurance' and any applicable 'other insurance' whether or not such limits are collectible," and that Lexington is obligated to make no payment until any such policies have been exhausted. *Id.* at 15-16.

After discovery concluded, both parties filed cross-motions for summary judgment. Great Divide's motion is premised on its "other insurance" policy language, which declares that for covered vehicles *not owned by Capitol*, the policy provides insurance that is "excess over any

---

[4] The policy defines the "Retained Amount" as either (1) the sum total of underlying insurance (listed in a schedule appended to the policy) and any applicable "other insurance," along with any "Self Insured" retention. SMF, Ex. B at 21.

4

other collectible insurance." *Id.*, Ex. C at 25. Great Divide argues that, *for the particular risk in question*, both it and Lexington are excess insurers; moreover, since the "other insurance" clauses of both policies declare themselves to be in excess of all other collectible insurance, the clauses are mutually repugnant and, under Great Divide's reading of Massachusetts law, both insurers are required to make pro rata contributions to the same layer of loss. *See Mission Ins. Co. v. U.S. Fire Ins. Co.*, 401 Mass. 492, 499 (1988). Lexington moves for summary judgment as well, arguing that because its policy is a "true excess policy," while the Great Divide Policy is excess only for the risk in question and primary under other circumstances, the Great Divide Policy must be exhausted before it has any obligation to pay.[5]

## DISCUSSION

---

[5] *See* 15 Couch on Ins. § 219:18 n.78 ("True excess insurance must be distinguished from insurance which is written to be primary, but includes an 'other insurance' clause making it excess in those circumstances in which another policy, also written to be primary, applies to the loss."). *See also Lexington Ins. Co. v. Virginia Sur. Co.*, 486 F. Supp. 2d 173, 177 (D. Mass. 2007) (observing that it is a "well-settled insurance principle" that "a primary policy must be exhausted before an excess policy attaches."). "Other insurance" provisions, by contrast, "establish a policy's relationship with other policies covering a loss." *Mission*, 401 Mass. at 495; *see also* 15 Couch on Ins. § 219:18 ("Because true excess insurance, which is written specifically to begin its coverage at a level well above the 'first dollar' of loss does not come into operation until the damage exceeds the maximum limitation of the primary policy, it does not constitute 'other insurance.'").

5

The "first step" in settling insurance priority conflicts is to "determine the relationship between insurer and insured." *U.S. Fidelity & Guar. Co. v. Hanover Ins. Co.*, 417 Mass. 651, 659 (1994), citing *Mission,* 401 Mass. at 498.  When confronted with seemingly conflicting policy language, Massachusetts courts "seek[], whenever possible, to reconcile conflicting policy clauses based on the sense and meaning of the terms in an effort to effectuate the language of the insuring agreements." *U.S. Fidelity*, 417 Mass. at 655.

It is clear from the language, terms, and scope of coverage of the Lexington Policy that it was intended to provide "umbrella" insurance to its insured.  Indeed, Great Divide does not dispute that the Lexington Policy is a "true" excess policy.  Conversely, the Great Divide Policy bears little resemblance to a true excess or umbrella policy except for its "other insurance" clause, which states that the Great Divide Policy will provide excess coverage over and above all other collectible insurance for any accident involving an insured operating a non-owned vehicle.

The parties agree that the Massachusetts Supreme Judicial Court (SJC) has yet to decide whether, under Massachusetts law, a primary policy which offers excess insurance in certain limited circumstances must be exhausted

before a true excess or umbrella policy is triggered.[6]  Both parties rely on *Mission* as support for their respective positions as the Massachusetts case most closely (but not precisely) on point.[7]  The court, however, is of the view (and the parties agree) that *Mission* does not directly answer the question of

---

[6] Great Divide acknowledges that the majority of courts in other jurisdictions have held, on facts similar to those here and construing policies with similar conflicting provisions, that "hybrid" policies like the one it issued to EZ must be exhausted before a true excess policy attaches, particularly where, as here, the "primary" policy contemplates contribution from other insurance sources. *See, e.g., State Farm Fire & Cas. Co. v. LiMauro*, 65 N.Y.2d 369, 374-376 (1985) ("[A]n insurance policy which purports to be excess coverage but contemplates contribution with other excess policies . . . must be exhausted before a policy which expressly negates contribution with other carriers, or otherwise manifests that it is intended to be excess over other excess policies. . . . Indicative of such an intent, though not conclusive, may be the fact that a policy is issued as 'umbrella' or 'catastrophe' coverage, at rates which reflect the reduced risk insured."); *see also Highlands Ins. Co. v. Cont'l Cas. Co.*, 64 F.3d 514, 520-521 (9th Cir. 1995) (applying California law); *Allstate Ins. Co. v. Am. Hardware Mut. Ins. Co.*, 865 F.2d 592, 594 (4th Cir. 1989) (applying West Virginia law); *Occidental Fire & Cas. Co. of N. Carolina v. Brocious*, 772 F.2d 47, 54 (3d Cir. 1985) (applying Pennsylvania law); *CNA Ins. Co. v. Selective Ins. Co.*, 354 N.J. Super. 369, 372-374, 378-381 (App. Div. 2002) (applying New Jersey law).

[7] Lexington relies on *Mission* and *U.S. Fidelity* as supportive of its cause, as in both cases the SJC made it a priority to analyze the relationship between insurers and their insureds before turning to the "other insurance" clauses; in this case, Lexington's relationship to its insured is that of an umbrella insurer, where Great Divide's is functionally that of a primary insurer.  Great Divide counters that *Mission* emphasizes foremost the importance of giving effect to the language of the relevant insurance agreements, and that the plain language of its "other insurance" clause clearly states that the Policy is intended to be in excess, when as here, an accident involves a non-owned vehicle of the insured.

priority posed by this case. The answer will have an impact on future cases as the same or similar "other insurance" clauses are common fixtures in commercial automobile policies.

A federal district court sitting in diversity may seek to predict a future dispositive ruling of the highest state court in its jurisdiction when there is no extant state court precedent addressing the issue. *See Norton v. McOsker*, 407 F.3d 501, 506 (1st Cir. 2005). However, where "the path of state law is sufficiently undeveloped, or the correct answer to the question before [it] sufficiently unclear, so as to make such prophetic action unwise, [a court] may instead choose to certify such questions to the highest court of the state." *Showtime Entm't, LLC v. Town of Mendon*, 769 F.3d 61, 79 (1st Cir. 2014). Under the circumstances, the court believes that certification is the prudent course to follow.[8]

### ORDER

Pursuant to Supreme Judicial Court Rule 1:03, the following question of state law is certified by this court to the Supreme Judicial Court of Massachusetts:

> Where there is a motor vehicle accident and the primary commercial automobile liability insurance policy issued to the

---

[8] Apart from the broader precedential value a decision by the SJC will have, the pendency of the certification will not delay the resolution of the underlying state wrongful death action.

owner of the vehicle involved in the accident is exhausted, what is the priority of coverage between (1) a second primary commercial automobile liability insurance policy insuring the driver of the vehicle, which contains an other insurance/non-owned vehicle clause providing (a) that, with respect to motor vehicles the insured owns, this insurance is primary, (b) that, with respect to motor vehicles the insured does not own, this policy is excess and (c) that "when this coverage form and any other coverage form or policy covers on the same basis, either excess or primary, we will pay only our share" and (2) a true excess liability insurance policy insuring the owner of the vehicle that contains an other insurance clause providing that "if other valid and collectible insurance applies to damages that are also covered by this policy, this policy will apply excess of the 'other insurance'"?

This court also welcomes the advice of the Supreme Judicial Court on any other questions of Massachusetts law it deems material to this case.

The Clerk of this Court is directed to forward to the Supreme Judicial Court, under official seal, copies of this Memorandum and Order and the entire record of this case. This case will be <u>STAYED</u> pending a response to the certified question from the Supreme Judicial Court.

        SO ORDERED.

        <u>/s/ Richard G. Stearns</u>
        UNITED STATES DISTRICT JUDGE